FILED

SEP 2 1 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF CALIFORNIA

3    SACRAMENTO DIVISION

4    In re:                          ) Case No. 09-37940-B-7
                                     )
5    TONY KUKUMO AKINSETE,           )
                                     )
6              Debtor(s).            ) Adversary No. 09-2769-B
     _____)
7    FANNIE MAE,                     ) DCN - PJK-3
                                     )
8              Plaintiff(s),         )
                                     )
9    vs.                             ) Date: March 15, 2011
                                     ) Time: 9:32 a.m.
10   TONY KUKUMO AKINSETE,           ) Place: U.S. Courthouse
                                     )        Courtroom 32
11             Defendant(s).         )        501 I Street
                                     )        Sacramento, CA 95814
12                                   )
                                     )
13   _____)

14       **MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT**

15       This matter came on for final hearing on March 15, 2011, at 9:32

16   a.m.  Appearances are noted on the record.  At the conclusion of the

17   hearing the court took the matter under submission.   The following

18   constitutes the court's findings of fact and conclusions of law,

19   pursuant to Federal Rule of Bankruptcy Procedure 7052.

20                              **DECISION**

21       The motion is denied.

22                         **FACTUAL BACKGROUND**

23       By this motion,  plaintiff Fannie Mae ("Fannie Mae") moves for

24   summary judgment under Fed. R. Civ. P. 56, made applicable to

25   this adversary proceeding by Fed. R. Bankr. P. 7056.

26       Fannie Mae initiated this adversary proceeding against the

27

28                              -1-

defendant Tony K. Akinsete (the "Debtor") by filing a complaint on November 23, 2009 (the "Complaint"). In its Complaint, Fannie Mae requests a judgment that its claim against the Debtor is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and/or (a)(6).

The facts underlying Fannie Mae's claim are set out more fully in the Complaint (Dkt. 1) and motion for summary judgment (Dkt. 113), but in short, the claim is as follows. On October 12, 2007, the Debtor purchased real property (a residential apartment complex) located at 2443 Wyda Way, Sacramento, California (the "Property") from Donald Diedrichs ("Diedrichs") subject to an existing loan from Washington Mutual in sum of $2,920,573.35. The purchase price of the Property was $3,925,000.00, of which $3,525,000.00 was in the form of an all-inclusive note (the "Wrap-Around Loan") consisting of the $2,920,573.35 owed to Washington Mutual and an additional $604,426.65 owed to Diedrichs.

On or about August 20, 2008, the Debtor applied for a $3,900,000.00 loan (the "Refinance Loan") from Greystone Servicing Corporation, Inc. ("Greystone"). The Refinance Loan was intended to refinance the Wrap-Around Loan. On or about September 22, 2008, the Debtor signed a "Commitment for Financing" (the "Commitment"). As part of the process, the Property was transferred to an entity known as Apartment Lane, LLC ("Apartment Lane"). Documentation of the Refinance Loan was completed on two dates. Apartment Lane executed a deed of trust, assignment of rents, security agreement, and fixture filing on

-2-

October 17, 2008.  Apartment Lane then executed a note to
Greystone in the amount of $4,030,000.00 on October 21, 2008.
Also on October 21, 2008, the Debtor executed a personal
guarantee on the Refinance Loan.  When the Refinance Loan closed,
it was sold to Fannie Mae, which became the successor-in-interest
to Greystone.  Subsequently, Apartment Lane defaulted on the
Refinance Loan, and the Property was sold at a public auction to
Fannie Mae for $500,000.00.  Fannie Mae filed the present
adversary complaint on November 23, 2009 seeking a judgment of
nondischargeability pursuant to 11 U.S.C. 523(a)(2)(A) and (a)(6)
in the amount of $4,912,085.86, the entire amount owed on the
Debtor's personal guaranty of the Refinance Loan.

## PROCEDURAL BACKGROUND

On April 5, 2010, Fannie Mae served its requests for
admissions, requests for the production of documents, and
interrogatories on the Debtor.  The Debtor failed to respond
timely to Fannie Mae's discovery requests.  The Debtor's then
counsel asked for, and was granted, an extension of time through
June 16, 2010 to respond to Fannie Mae's discovery requests.  In
the interim period, the Debtor's then counsel withdrew as the
Debtor's attorney of record.  The Debtor failed to respond to
Fannie Mae's discovery requests within the extension period.
Based on part on the deemed admissions, Fannie Mae filed a motion
for summary judgment on August 27, 2010 (the "First MSJ").  The
First MSJ was set for hearing on September 28, 2010.  On
September 14, 2010, the Debtor negotiated a recommencement of

-3-

services from his former counsel.  On September 23, 2010, the
Debtor then filed a response to the requests for admissions and
interrogatories, and a motion to withdraw the deemed admissions
which was set for hearing on October 26, 2010.  The court
continued the First MSJ to be heard concurrently with the
Debtor's motion to withdraw the deemed admissions.

On October 26, 2010, the court conducted a hearing on the
Debtor's motion to withdraw his deemed admissions and Fannie
Mae's First MSJ.  At the conclusion of the hearing, the court
orally granted the Debtor's motion to withdraw his deemed
admissions.  Fannie Mae did not withdraw the First MSJ, and that
matter was taken under submission.  The court subsequently
entered an order allowing the withdrawal of the deemed admissions
and extending discovery deadlines.  On January 3, 2011 (Dkt. 122)
the court entered an order denying the First MSJ.

During the time the First MSJ was taken under submission but
before the court entered an order denying the First MSJ, Fannie
Mae filed a second motion for summary judgment on December 18,
2010 (Dkt. 113) (the "Second MSJ").  The Second MSJ was set for
hearing on January 18, 2011, and at the conclusion of the hearing
the Second MSJ was continued to March 15, 2011.  On March 15,
2011, the court conducted the hearing on the Second MSJ,
and noted that the deadline for hearing motions for summary
judgment expired on October 26, 2010.  However, in considering
the prior case history, the court, *sua sponte*, modified the
scheduling order to extend the last date to hear motions for

summary judgment to March 15, 2011.  At the conclusion of the
hearing, the Second MSJ was taken under submission.  While the
Debtor argues that the filing of the Second MSJ was "improper"
when the First MSJ was still under submission, the Ninth Circuit
recently stated that courts have discretion to entertain successive
motions for summary judgment. See Hoffman v. Tonnemacher, 593 F .3d
908, 911 (9th Cir. 2010).  Additionally, "the possibility of summary
judgment remains on the table even after the district court has denied
a summary judgment motion because that order is 'subject to
reconsideration by the court at any time.'"  Id. (quoting Dessar v.
Bank of Am. Nat'l Trust & Sav. Ass'n, 353 F.2d 468, 470 (9th
Cir.1965)); cf. City of Los Angeles, Harbor Div. v. Santa Monica
Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district
court has jurisdiction over the case, then it possesses the inherent
procedural power to reconsider, rescind, or modify an interlocutory
order for cause seen by it to be sufficient." (quoting Melancon v.
Texaco, Inc., 659 F.2d 551, 553 (5th Cir.1981))).  Accordingly, this
memorandum decision constitutes the court's findings of fact and
conclusions of law with regard to the Second MSJ.

## ANALYSIS

### The Law Applicable to A Motion for Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to this
proceeding by Bankruptcy Rule 7056, provides that summary
judgment is appropriate if the pleadings, depositions, answers to
interrogatories, admissions on file, and declarations, if any,
show that there is "no genuine issue of fact and that the moving

-5-

party is entitled to judgment as a matter of law." "The initial burden of showing the absence of a material factual issue is on the moving party. Once that burden is met, the opposing party must come forward with specific facts, and not allegations, to show a genuine factual issue remains for trial." DeHorney v. Bank of America N.T.&S.A., 879 F.2d 459, 464 (9th Cir. 1989); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 278-280 (1986). On summary judgment, all reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

## The Complaint and Claims for Relief

Fannie Mae's Complaint and Second MSJ are very difficult to analyze. While it is clear that Fannie Mae believes that the Debtor did something wrong, the actual theory or theories of fraud under 11 U.S.C. 523(a)(2)(A) on which Fannie Mae relies are not at all clear. In some instances, the Complaint alleges that the Debtor "engaged in a scheme" to remove Diedrichs' subordinate interest "so that it appeared that no subordinate interest existed against [the Property]." (Dkt. 1 at 6, para. 18-19; Dkt. 54 at 11). These allegations imply that the Debtor concealed Diedrichs' junior lien that existed as part of the Wrap-Around Loan prior to obtaining the Refinance Loan. However, in other

-6-

instances, the Complaint and Second MSJ allege that the Debtor
would use the Refinance Loan proceeds to "pay off existing
indebtedness," and that the Debtor "did not pay off all existing
indebtedness and recorded a subordinate lien [on the Property]."
(Dkt. 113 at 10).  The Complaint and Second MSJ further alleges
that pursuant to the Commitment or Refinance Loan the Debtor
"promised [he] would not grant a subordinate interest in the
[Property] without the prior written consent of Greystone"  (Dkt.
113 at 7), and that Greystone would have never "made" the
Refinance Loan if it had known the Debtor would record a
subordinate lien on the Property.  (Dkt. 113 at 11).  These
allegations imply that the Debtor had an undisclosed intention to
convey a junior lien in favor of Diedrichs on the Property after
the Refinance Loan closed.  Regardless, the court will consider
both theories of fraud in its ruling.

Due to the various theories of fraud implicated in the
Complaint and Second MSJ, the court construes the Complaint as
having three claims for relief.  Considering the foregoing, the
court will next address each claim for relief.

*1. First Claim For Relief (11 U.S.C. § 523(a)(2)(A)) - The Debtor*
*Concealed Diedrichs' Subordinate Interest to Obtain the Refinance*
*Loan*

While not emphasized in the Second MSJ but certainly
implicated in the Complaint, Fannie Mae seeks a judgment of
nondischargeability under 11 U.S.C. § 523(a)(2)(A) based on the
Debtor's "scheme" to remove Diedrichs' subordinate interest "so

that it appeared that no subordinate interest existed against
[the Property]."  (Dkt. 1 at 6, para. 18-19).  As part of this
"scheme," Fannie Mae alleges that the Debtor "caused" Diedrichss
subordinate interest to be removed from the Property prior to
obtaining the Refinance Loan.  (Dkt. 1 at 6, para. 18).  Fannie
Mae also alleges that Greystone then relied on the alleged
misrepresentation that no subordinate financing existed on the
Property and consummated the Refinance Loan.  Fannie Mae alleges
that it would have never purchased the Refinance Loan had it
known of Diedrichs' subordinate interest.

In a claim for relief brought pursuant to 11 U.S.C. §
523(a)(2)(A), an individual is not discharged from any debt for
money, property, services, or an extensions, renewal, or
refinancing of credit, to the extent obtained by false pretenses,
a false representation, or actual fraud, other than a statement
respecting the debtor's or an insider's financial condition.  To
prevail in an action under this section, a creditor must
establish by a preponderance of the evidence: (1) that the debtor
made a representation; (2) the debtor knew at the time the
representation was false; (3) the debtor made the representation
with the intention and purpose of deceiving the creditor; (4) the
creditor relied on the representation; and (5) the creditor
sustained damage as the proximate result of the representation.
In re Sabban, 600 F.3d 1219, 1222 (9th Cir. 2010); American
Express Travel Related Services Co. v. Hashemi (In re Hashemi),
104 F.3d 1122, 1125 (9th Cir. 1996), cert. denied sub nom Hashemi

-8-

1  v. American Express Travel Related Serv. Co., 520 U.S. 1230, 117

2  S.Ct. 1824, 137 L.Ed.2d 1031 (1997); see also Grogan v. Garner,

3  498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); In

4  re Eashai, 87 F.3d 1082, 1086-87 (9th Cir. 1996).

5      Here, the misrepresentation at issue is the Debtor's alleged

6  representation to Greystone that no subordinate interest existed

7  against the Property.  As to the first and second elements of

8  claim brought under 11 U.S.C. § 523(a)(2)(A), Fannie Mae asserts

9  that "[the debtor] submitted a preliminary title report...which

10 did not reflect the previously secured interest of

11 [Diedrichs]..."  (Guthery Dec., Dkt. 116 at 3, para. 5).  Fannie

12 Mae fails to assert any oral misrepresentations made by the

13 Debtor in connection with the existence of Diedrichs' subordinate

14 interest.  Nonetheless, based on the review of the summary

15 judgment record, Fannie Mae has not established that there is no

16 dispute of material fact that the Debtor concealed Diedrichs'

17 lien in the preliminary title report.  To the contrary, the

18 summary judgment record shows that Diedrichs' lien was disclosed

19 in the preliminary title report.  (Dkt. 119 at 47).  The

20 preliminary title report disclosed a $3,525,000.00 lien on the

21 Property for the benefit of "Donald Diedrichs."  This lien was

22 recorded on October 12, 2007.  (Dkt. 119 at 47).  Fannie Mae

23 appears to imply that Diedrichs secured interest in the amount of

24 $604,426.65 should have been disclosed separately in the

25 preliminary title report.  However, Diedrichs held a junior lien

26 as part of the Wrap-Around Loan (Washington Mutual held the

27

28                              -9-

senior lien), and the preliminary title report disclosed the $3,525,000.00 lien on the Wrap-Around Loan, which is the sum of Washington Mutual's senior lien and Diedrichs' subordinate lien. At the time Greystone agreed to consummate the loan, the summary judgment record shows that a lien on the Property for the benefit of "Donald Diedrichs" was disclosed in the preliminary title report.

Additionally, the Debtor states in his declaration under oath that he "did not do anything to conceal this secured debt" and "did not ask that anyone conceal this debt." (Akinsete Dec., Dkt. 80 at 2, para. 2). The Debtor has also raised an issue of fact concerning whether he had submitted the preliminary title report. In the Debtor's declaration under oath, the Debtor states "I did not prepare a preliminary title report or submit a preliminary title report." (Akinsete Dec., Dkt. 80 at 2, para. 2). Furthermore, Fannie Mae has failed to provide any summary judgment evidence that would otherwise establish that the Debtor had misrepresented the status of the Diedrichs' lien. Accordingly, there are genuine issues of material fact regarding representations the Debtor made concerning Diedrichs' lien to Greystone.

The court makes no determination as to whether fraud perpetrated on Greystone is actionable by Fannie Mae absent a determination that the Debtor knew Fannie Mae was purchasing the Refinance Loan.

Based on the forgoing, Fannie Mae's Second MSJ with respect

-10-

1   to the First Claim for Relief is denied.

2       *2. Second Claim For Relief (11 U.S.C. § 523(a)(2)(A)) - The*

3   *Debtor Intended to Grant Diedrichs a Subordinate Interest After*

4                   *the Refinance Loan Closed.*

5       As to Fannie Mae's primary theory of fraud under 11 U.S.C. §

6   523(a)(2)(A), Fannie Mae seeks a judgment of nondischargeability

7   based on the Debtor's alleged secret intention to place a

8   subordinate interest for the benefit of Diedrichs on the Property

9   after the Refinance Loan closed.  In relevant part, and while not

10  entirely clear, Fannie Mae appears to allege the following.  The

11  Debtor represented that the Refinance Loan would "refinance

12  existing indebtedness on the Property," and Greystone agreed to

13  consummate the Refinance Loan with the understanding that the

14  Wrap-Around Loan would be refinanced in its entirety - the

15  amounts owed to Washington Mutual and Diedrichs would be paid in

16  full when the Refinanced Loan closed.  (Gunthery Dec., Dkt. 116

17  at 4, para. 7).  Greystone would not have agreed to consummate

18  the Refinance Loan if any portion of the Wrap-Around Loan was

19  left unpaid and subordinated to the Refinance Loan.  (Id.).  The

20  Commitment prohibited subordinate financing or the imposition of

21  any other junior financing on the Property for a period of

22  one-year.  The Debtor proceeded to obtain financing from

23  Greystone in amount sufficient to repay the entire balance of the

24  Wrap-Around Loan.  However, the Debtor secretly intended to repay

25  only Washington Mutual's portion of the Wrap-Around Loan, and

26  convince Diedrichs to subordinate his portion of the Wrap-Around

27

28                          -11-

Loan in the amount of $604,426.64 to the Refinance Loan.    In
doing so, the Debtor would keep $604,426.64 for himself.    The
Debtor knew that if he effectuated his secret intention, the
outcome would be contrary to the terms of the Commitment.    To
effectuate this secret intention, the Debtor represented to
Diedrichs that he could only obtain enough financing to repay
Washington Mutual's portion of the Wrap-Around Loan.    (Diedrichs
Dec., Dkt. 55 at 2, para. 4).    The Debtor eventually convinced
Diedrichs to subordinate his portion of the Wrap-Around Loan to
the Refinance Loan.    ((Diedrichs Dec., Dkt. 55 at 2, para. 4).
When the Refinance Loan closed, Washington Mutual's portion of
the Wrap-Around Loan was paid, but Deidrichs' portion was not,
and the Debtor "caused to be placed" on the Property a
subordinate secured interest of Diedrichs in the amount of
$604,426.64.    (Dkt. 1 at 4, para. 20; Dkt. 118 at 9, para. 21)
Fannie Mae ultimately alleges that Greystone would not have
consummated the Refinance Loan had it known of the Debtor's
secret intention, and that the granting of any subordinate
interest was contrary to the terms of the Commitment.    Fannie Mae
alleges that it was an integral part of the Refinance Loan, and
had Fannie Mae known of the Debtor's alleged secret intention it
would not have purchased the Refinance Loan.

      There are some inconsistencies with this version of Fannie
Mae's claim.    Here, Diedrichs held a junior lien as part of the
Wrap-Around Loan (Washington Mutual held the senior lien).    The
Debtor said to Diedrichs (not Fannie Mae) that if he (Diedrichs)

1  "subordinated," the Debtor would give him a new junior lien.

2  (Diedrichs Dec., Dkt. 55 at 2, para. 4).  However, there would be

3  no need for a "new lien" if Diedrichs "subordinated" his lien

4  because a portion of the Wrap-Around Loan was unsatisfied when

5  the Refinance Loan closed.  A "new lien" would only be required

6  if Diedrichs was going to reconvey the lien on the Wrap-Around

7  Loan.  There is no evidence that such a reconveyance occurred.

8  While the exact sequence of events is unclear, the court can

9  still address the substance of Fannie Mae's summary judgement

10  motion as to this claim for relief.

11      Again, to prevail in an action under 11 U.S.C. §

12  523(a)(2)(A), a creditor must establish by a preponderance of the

13  evidence: (1) that the debtor made a representation; (2) the

14  debtor knew at the time the representation was false; (3) the

15  debtor made the representation with the intention and purpose of

16  deceiving the creditor; (4) the creditor relied on the

17  representation; and (5) the creditor sustained damage as the

18  proximate result of the representation.  In re Sabban, 600 F.3d

19  1219, 1222 (9th Cir. 2010); American Express Travel Related

20  Services Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th

21  Cir. 1996), cert. denied sub nom Hashemi v. American Express

22  Travel Related Serv. Co., 520 U.S. 1230, 117 S.Ct. 1824, 137

23  L.Ed.2d 1031 (1997); see also Grogan v. Garner, 498 U.S. 279,

24  290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); In re Eashai, 87

25  F.3d 1082, 1086-87 (9th Cir. 1996).  Relevant to the facts in the

26  Second Claim for Relief, a failure to disclose a material fact

27

28                              -13-

may give rise to liability under 11 U.S.C. § 523(a)(2)(A). In re Apte, 96 F.3d 1319, 1323-24 (9th Cir. 1996).

The court construes this Claim for Relief brought under 11 U.S.C. § 523(a)(2)(A) as a claim of fraudulent nondisclosure. Here, Fannie Mae alleges that the Debtor made a false representation when he failed to disclose to Greystone his secret intention to keep a portion of the Refinance Loan for himself and convince Diedrich's to subordinate his portion of the Wrap-Around Loan to the Refinance Loan. As to the first and second elements of a fraudulent nondisclosure under 11 U.S.C. § 523(a)(2)(A), courts look to the Restatement (Second) of Torts (1976) as "the most widely accepted distillation of the common law of torts" at the time Section 523(a)(2)(A) was added to the Bankruptcy Code for guidance. In re Apte, supra, 96 F.3d at 1324 (citing Field v. Mans, 516 U.S. 59, 68, 116 S.Ct. 437 (1995)).

Section 551 of Restatement (Second) of Torts (1976) provides:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the

-14-

transaction is consummated,

\* \* \* \* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Id. (citing Restatement (Second) of Torts (1976) § 551).

As to the first and second elements of Fannie Mae's fraudulent nondisclosure claim brought under 11 U.S.C. § 523(a)(2)(A), the summary judgment record fails to establish that the Debtor's intention to keep a portion of the Refinance Loan for himself or grant Diedrichs a subordinate lien on the Property were "facts basic to the transaction." Rather, the only evidence supporting Fannie Mae's contention that Greystone would have never made the Refinance Loan if the Debtor had disclosed his secret intention is Marcus Gunthery's (director of Greystone) declaration under oath that "[h]ad Greystone been provided with all the facts concerning Diedrichs' secured interest in the [Property] and the true fair market value of the [Property] given Diedrichs' undisclosed interest, it would not have made the Loan." (Gunthery Dec., Dkt. 116 at 4, para. 7). Mr. Gunthery's statement is inconsistent in that the granting of a subordinate lien does not affect Fannie Mae's interest as holder of the first deed of trust in the Property, nor does a subordinate lien affect the "true fair market value" of the Property. Furthermore,

-15-

Fannie Mae asserts it would have never purchased the Refinance Loan because the Commitment prohibited subordinate financing. However, the summary judgment evidence simply establishes that the "mortgage documentation" would include standard covenants that prohibited secondary financing or junior liens on the Property for a period of one year, and upon expiration of that time period, any secondary financing or junior liens required written approval by Fannie Mae. (Gunthery Dec., Dkt. 116 at 3, para. 4). Such a provision does not establish that the Refinance Loan would have never been made by Greystone or purchased by Fannie Mae. Accordingly, there are genuine issues of material fact regarding whether the Debtor's intention to keep a portion of the Refinance Loan for himself or grant Diedrichs a subordinate lien on the Property were "facts basic to the transaction."

To the extent Fannie Mae may be asserting that the Debtor's affirmative action of submitting a preliminary title report to Greystone created a duty to disclose any future intention the Debtor may have had to place subordinate liens on the Property, that assertion is unpersuasive. The court is aware of no legal authority that creates such a duty. Furthermore, and as discussed previously, there are genuine issues of material fact regarding whether the Debtor submitted the preliminary title report to Greystone or took any action to alter the preliminary title report.

To the extent Fannie Mae argues that the Debtor made a false

representation when he failed to disclose his future intent to grant Diedrichs a subordinate lien because the Commitment created a duty to disclose this intention or contained a "promise" that the Debtor would not do so, these facts are not established by the summary judgment record. The summary judgement record does not establish that the Commitment specifically required the Debtor to disclose any future intention he might have had in regard to additional liens, nor does anything in the Commitment specifically state that new subordinate liens were prohibited. To the contrary, the condition referenced by Fannie Mae as the basis for the "promise" is contained in "Exhibit E - General Conditions - Standard Additional Requirements." (Dkt. 119 at 36). This section of the Commitment only provides that if the Debtor "obtains or secures secondary financing without the approval of Greystone, Greystone shall have the right, in its sole discretion, to accelerate the loan and declare it due and payable." Id. The summary judgment evidence simply establishes that the "mortgage documentation" would include the standard covenants outlined above. (Dkt. 119 at 36).

In short, the summary judgement record fails to establish that the Debtor's alleged intention to grant Diedrichs a subordinate lien on the Property was a fact basic to the transaction and that the Debtor had a duty to disclose that fact to Greystone or Fannie Mae.

As to the third element of Fannie Mae's 11 U.S.C. § 523(a)(2)(A) claim, the summary judgment evidence does not show

-17-

that there is no genuine issue of fact as to whether the Debtor made a false representation by failing to disclose a fact he had a duty to disclose, much less made the false representation with the intent to deceive Fannie Mae.  Further, the Debtor's declaration under oath in opposition to Fannie Mae's motion for summary judgment states that he "did not do anything to conceal" the subordinate lien, nor "asked anyone to conceal" or "intended to conceal" the subordinate lien from Fannie Mae.  (Dkt. 80 at 2, para. 3).  Additionally, courts are hesitant to grant summary judgment on issues involving motive or intent because such issues are difficult to establish absent a hearing where the court can judge the credibility and demeanor of witnesses, and such issues are generally provable only by circumstantial evidence.  See, e.g., Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962); see also Maffei v. N. Ins. Co. of New York, 12 F.3d 892, 898 (9th Cir. 1993); Wilson v. Seiter, 893 F.2d 861, 866 (6th Cir. 1990); Marohnic v. Walker, 800 F.2d 613, 617 (6th Cir. 1986); A.T. & T. Universal Card Servs. v. Burns (In re Burns), 196 B.R. 11 (Bankr. W.D.N.Y. 1996) ("[I]t is almost axiomatic that fraudulent intent is uniquely not susceptible to resolution 'on papers.'") (quoted in A.T. & T. Universal Card Servs. v. Berry (In re Berry), 197 B.R. 382, 383 (Bankr. M.D.Fla. 1996)). Given the summary judgment recorded provided by Fannie Mae and the previously discussed genuine issues of material fact, this court is also hesitant to grant summary judgment on issues involving the Debtor's motive or intent.

-18-

As to the fourth and fifth elements of Fannie Mae's 11 U.S.C. § 523(a)(2)(A) claim, the critical inquiry is whether the Debtor's future intention to grant Diedrichs a subordinate lien was material to the transaction.  <u>In re Apte</u>, supra, 96 F.3d at 1323; <u>see also</u> <u>Titan Group, Inc. v. Faggen</u>, 513 F.2d 234, 239 (2d Cir. 1975) ("In cases involving nondisclosure of material facts, even when coupled with access to the information, materiality rather than reliance thus becomes the decisive element of causation"), cert. denied, 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975).  "[W]here an individual knows ... that another is acting without knowledge of material facts, the reliance element is satisfied by objective proof, i.e.,  whether a reasonable person might have considered the facts important to his or her decision."  <u>In re Apte</u>, 96 F.3d at 1323 (quoting <u>In re Demarest</u>, 176 B.R. 917, 922 (Bankr. W.D.Wash. 1995).

Once again, the only evidence in the summary judgment record supporting the fourth and fifth elements of Fannie Mae's 11 U.S.C. § 523(a)(2)(A) claim is Marcus Gunthery's declaration that "[h]ad Greystone been provided with all the facts concerning Diedrichs' secured interest in the [Property] and the true fair market value of the [Property] giving Diedrichs' undisclosed interest, it would not have made the Loan."  (Gunthery Dec., Dkt. 116 at 4, para. 7).  Fannie Mae has presented no other objective evidence on this issue.  Furthermore, the Debtor has set forth specific facts that presents a triable issue as to the fourth and fifth elements.  Here, the Debtor's declaration under oath in

-19-

1  opposition to this motion states that the amended bankruptcy
2  schedules indicates that the Debtor "controlled $45.8 million in
3  assets and owed $33.8 million in debt as of the petition date."
4  (Dkt. 80 at 4, para. 11). The Debtor further states that
5  "monthly operating reports reflected $172,131.00 in monthly
6  operating revenue." Id. These facts, taken in light of the
7  personal guarantee the Debtor signed as part of the Refinance
8  Loan, creates a genuine issue of fact as to whether a reasonable
9  creditor might have considered the Debtor's failure to disclose
10 his secret intention to grant a subordinate lien in the amount of
11 $604,426.64 would be material to its lending decision.

12     The court makes no determination as to whether fraud
13 perpetrated on Greystone is actionable by Fannie Mae absent a
14 determination that the Debtor knew Fannie Mae was purchasing the
15 Refinance Loan.

16     Based on the forgoing, Fannie Mae's motion for summary
17 judgement with respect to the Second Claim for Relief (fraudulent
18 nondisclosure) is denied.

19     3.   Third Claim For Relief (11 U.S.C. § 523(a)(6)).

20     Fannie Mae also seeks a judgment of nondischargeability
21 under 11 U.S.C. § 523(a)(6) based on the allegations set forth
22 above.

23     11 U.S.C. § 523(a)(6) provides that an individual is not
24 discharged "from any debt for willful and malicious injury by the
25 debtor to another entity or to the property of another entity."
26 The "willful and malicious" standard for the purposes of §

27

28                              -20-

523(a)(6) is a two-pronged test.  Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831 (9th Cir. B.A.P. 2006).  Under the first prong, the plaintiff must allege and prove that there was a "willful" injury.  "[T]he standard for meeting the willful prong of the two-part test under § 523(a)(6) is high.  That is, the creditor must allege and prove that the debtor had the subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur."  Luc v. Chien (In re Chien), No. NC-07-1268-JuMkK at *11 (9th Cir. Bap, February 7, 2008)(citing Kawaauhau v. Geiger, 523 U.S. 57 (1998) and Carillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002)).  Under the second prong, the plaintiff must allege and prove that there was a "malicious" injury.  An injury is "malicious" when it is caused by "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) [the wrongful act] is done without just cause or excuse."  Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106 (9th Cir. 2005) citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001), cert. denied, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001).

    For the reasons discussed in the prior claims for relief, there are genuine issues of material fact regarding whether the debtor's actions in connection with the Refinance Loan were "willful and malicious."  The summary judgment motion as to the Third Claim for Relief is denied for the same reasons that the motion is denied with respects to the First and Second Claims for Relief.

-21-

1     Based on the forgoing, Fannie Mae's motion for summary

2  judgment with respect to the Third Claim for Relief is denied.

3     The court will issue a separate order consistent with this

4  ruling.

5

6  Dated: SEP 2 0 2011

                        UNITED STATES BANKRUPTCY JUDGE

-22-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

Patric J. Kelly
577 Salmar Ave 2nd Fl
Campbell CA 95008

Jeffrey M. Meisner
1930 Del Paso Rd., # 121
Sacramento CA 95834

DATED: 9/22/11

By _____
        Deputy Clerk

EDC 3-070 (Rev. 6/28/10)